681 P.2d 1

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Dale GIBSON, Defendant-Appellant.**

**No. 13830.**

Court of Appeals of Idaho.

Feb. 28, 1984.

Rehearing Denied May 18, 1984.

Petition for Review Denied
July 11, 1984.

William J. Tway and Anton Hohler, Tway & Tway, Charles D. Coulter, Boise, for defendant-appellant.

David H. Leroy, Atty. Gen., Lynn E. Thomas, Sol. Gen., Larry Harvey, Chief Deputy Atty. Gen., Boise, for plaintiff-respondent.

BURNETT, Judge.

In this case we review the sufficiency of evidence to support a conviction for attempted subornation of perjury. We also examine a claim that due process was violated when a judge considered information outside the record during a sentencing hearing. For reasons explained below, we affirm the judgment of conviction and the sentence.

## I

Subornation of perjury is the wilful procurement of another person to give false testimony under oath. I.C. §§ 18–5401, 18–5410. It is a felony, and an unsuccessful attempt to commit it is also a felony. *See* I.C. § 18–306. In this section of our opinion we identify the elements of attempted subornation, and we weigh them against the record before us.

## A

Attempted subornation draws its elements from the general crime of attempt and from the specific offense of suborning perjury. The Idaho Supreme Court has held that "attempt" consists of "(1) an intent to do an act ... which would in law amount to a crime; and (2) an act in furtherance of that intent which, as it is most commonly put, goes beyond mere preparation." *State v. Otto*, 102 Idaho 250, 251, 629 P.2d 646, 647 (1981) (emphasis deleted), (*quoting* W. LaFAVE & A. SCOTT, HANDBOOK ON CRIMINAL LAW 423 (1972)). *See also* R. PERKINS, CRIMINAL LAW 552 (2d ed. 1969). The underlying offense of suborning perjury is comprised of a corrupt agreement to testify falsely, followed by the wilful giving of material testimony which the witness and procurer know to be false. *People v. Jones*, 254 Cal.App.2d 200, 62 Cal.Rptr. 304 (1967); *see generally* 4 C. TORCIA, WHARTON'S CRIMINAL LAW § 607 (14th ed. 1981).

Thus, attempted subornation couples an intent to procure material and false testimony with the act of soliciting an agreement to testify falsely, although such testimony ultimately is not given. This formulation is consistent with the jury instructions on attempt and suborning perjury given in this case. It embraces the commonly recognized elements of attempted subornation. *See, e.g., Dodys v. State*, 73 Ga.App. 483, 37 S.E.2d 173 (1946); *State*

*v. Johnson,* 84 A. 1040 (Del.1912); *see generally* R. PERKINS, *supra* at 467–68.

## B

A jury found Dale Gibson guilty of attempting to procure perjured testimony by a person from whom he allegedly had obtained property under false pretenses. Gibson had purchased hay from this individual, paying him a price determined by weight. The seller later suspected that Gibson had "shorted" him. Following a sheriff's investigation of Gibson's business dealings, several felony charges were filed. A preliminary hearing was scheduled.

Before the hearing, Gibson telephoned the hay seller. Unknown to Gibson, law enforcement officers recorded the conversation, with the seller's consent. The content of that dialogue provided the evidence for charging Gibson with attempted subornation. At trial the jury listened to the tape recording. They heard Gibson ask the seller if he really considered himself "shorted," to which the seller replied that he did. After discussing the amount of the shortage, Gibson offered the seller $1,200.00 and said, "You'll just have to say that you got to going back over your [weight] tickets and you decided you wasn't short." Gibson reiterated the testimony the seller should give at the preliminary hearing: "You're gonna have to say that ... after [talking to the sheriff] you went back over your tickets and ... recounted your bales and ... [say] I'm not short." Near the end of the conversation, Gibson stated he would give the seller "whatever you want to get on the witness stand and say that I bought your hay and you're not short."

During this conversation Gibson also stated that he wanted to talk to an attorney, and he arranged to meet with the seller the next day in the attorney's office. Just before the conference with the attorney, Gibson asked the seller to "tell it like it is." During the conference the seller's weight tickets were analyzed and various computations were made. At the conclusion of this meeting, the seller said he was

no longer sure he had been "shorted." Gibson paid him no money. However, the seller reviewed his figures again after the meeting, determining that in fact he had been shorted. He so testified at the preliminary hearing. Gibson was bound over to district court on the charges of obtaining property under false pretenses. However, the charges subsequently were dismissed for reasons not disclosed by the record. The instant charge of attempting to suborn perjury then was filed, resulting in the conviction now on appeal.

## C

When examining the evidence in support of a criminal conviction, we acknowledge that the jury is the fact finder. Jurors are permitted to draw all reasonable inferences from the evidence presented. Therefore, we view the record on appeal favorably to the state. *State v. Erwin,* 98 Idaho 736, 572 P.2d 170 (1977); *State v. Greensweig,* 103 Idaho 50, 52, 644 P.2d 372, 374 (Ct.App.1982). With this standard in mind, we turn to Gibson's attack upon the sufficiency of the evidence that he attempted to suborn perjury.

Gibson first argues that his offer of money to the seller was for the purpose of settling an account, not to buy perjured testimony. Our analysis of the recorded telephone conversation shows that the seller claimed a shortage of forty tons of hay and that the price had been thirty dollars per ton. This could account for the figure of $1,200.00 offered. However, the offer was coupled with specific discussion of false testimony. Thus, whether the offer pertained solely to hay or also to future testimony was a question of fact for the jury to decide. Implicitly they determined that the offer was connected with testimony. We will not second-guess that determination on appeal.

Gibson further contends that the offer was equivocal. He urges that because he expressed a desire to talk with his attorney, the offer was conditioned upon that meeting. The jurors could have drawn the

inference urged by Gibson. However, the jury also could have inferred—and implicitly did infer—that Gibson referred to an attorney not out of fealty to the law but because he sought a meeting to evaluate the evidence against him and to ascertain the actual amount needed to compensate the seller's "shortage." Again, we will not interfere with the jury's function of·drawing permissible inferences.

Gibson also asserts, as a matter of law, that his offer was merely a preparatory act, insufficient to constitute an attempt. Gibson relies for this proposition upon *State v. Otto*, 102 Idaho 250, 629 P.2d 646 (1981). In that case, a conviction for attempted murder was reversed because the defendant's acts constituted mere preparation and did not rise to the level of undertaking to perpetrate the crime. The defendant had solicited another person to commit a murder and had paid him $250 with the promise of a larger sum after completion of the crime. Holding these acts insufficient to constitute an attempt, the court observed that "[t]he concern of the criminal law is to determine at which points along˙ a continuum of activity criminal liability of different degrees will attach." *Id.* at 251, 629 P.2d at 647. The court focused on whether the defendant's conduct "amounted to more than solicitation ... and reached the extent or degree of an attempt." *Id.* On the strength of *Otto*, Gibson now argues that his offer was mere solicitation—an act of preparation rather than of perpetration. We disagree.

■ In *Otto* the underlying crime was murder. The Supreme Court noted that the intended perpetrator—the person solicited by the defendant—had taken no steps toward commission of the crime. Here, the underlying crime is subornation of perjury. The intended perpetrator was not the person solicited but Gibson himself. The essence of subornation is the agreement to present false testimony. By soliciting such an agreement—making the telephone call, offering $1,200.00 and instructing the seller on how to testify—Gibson did not merely prepare, but overtly began to perpetrate, the crime of subornation.

■ Gibson next argues that he voluntarily abandoned any subornation attempt upon advising the seller, just before the meeting with the attorney, to "tell it like it is." Our Supreme Court has not yet decided whether abandonment is a defense to the crime of attempt. There is a substantial split of authority as to whether the voluntary abandonment of an attempt constitutes a complete defense. *See, e.g.*, 4 C. TORCIA, *supra* at § 748; Perkins, *Criminal Attempt and Related Problems*, 2 U.C.L.A.L.REV. 319 (1955); W. LaFAVE & A. SCOTT, *supra* at 446–51. However, we need not make that choice in this case. As noted earlier, Gibson's remark to the seller could have been viewed by the jury not as an abdication of intent to suborn perjury but as a stratagem to see how great a "shortage" would have to be compensated in order to procure the desired testimony. Thus, the jury could reasonably have inferred that Gibson's statement did not manifest a complete renunciation of his purpose.

■ Finally, Gibson urges that even if the concept of abandonment were inapplicable, discontinuation of the attempt would remove the case from the general attempt statute, I.C. § 18–306. This statute, by its own terms, applies to a person "who attempts to commit any crime, but fails, or is prevented or intercepted in the perpetration thereof." However, the evidence does not establish when, if ever, the subornation attempt actually was discontinued. The jury permissibly could have found that Gibson never withdrew his offer to pay whatever the seller wanted for favorable testimony. Alternatively, the jury could have found that the attempted subornation had been undertaken and had failed during the telephone conversation. Discontinuing the attempt after it had been made and had failed would not take the case outside I.C. § 18–306.

■ We conclude that the record adequately supports the jury's determination

that the elements of attempted subornation were proven. The judgment of conviction, entered upon the jury's verdict, will not be disturbed.

## II

Gibson was sentenced to the custody of the Board of Correction for an indeterminate term not exceeding three years. He contends that he was denied due process when the judge utilized information outside the record in determining an appropriate sentence. As noted above, a preliminary hearing was conducted on the original charges of obtaining money by false pretenses. During that hearing—a transcript of which is not part of the record in this case—Gibson apparently admitted using fraudulent weight tickets. The trial judge in the instant case was the same district judge who dismissed the false pretense charges after Gibson had been bound over by a magistrate. The judge was familiar with the transcript of the preliminary hearing.

At the sentencing hearing in the instant case, the judge announced that he would consider evidence presented at the preliminary hearing on the other charges in evaluating Gibson's attitude and lack of remorse. The judge noted that the evidence showed "a conversation in [Gibson's] office at which he admitted making double weight tickets for hay, but rationalized that was all right because most of the scales around the county are not accurate anyway." The judge also remarked that Gibson had "admit[ted] making the double weight tickets, he admit[ted] using the heavier when he settled with the buyer and using the lighter when he settled with the person who sold him the hay." Gibson's attorney then objected to the judge's observations because they were based upon information outside the record in this case.

■ Our Supreme Court has stated that a sentencing judge should consider the character of the defendant in fixing punishment. *State v. Fuchs*, 100 Idaho 341, 597 P.2d 227 (1979); *State v. Mansfield*, 97 Idaho 138, 540 P.2d 800 (1975). The judge

may consider, with due caution, prior dismissed charges and charges currently pending against the defendant. *State v. Ott*, 102 Idaho 169, 627 P.2d 798 (1981). The Supreme Court has also held that the judge may consider evidence of the defendant's participation in criminal conduct for which he has not been convicted or for which an information has not been secured. *State v. Kohoutek*, 101 Idaho 698, 619 P.2d 1151 (1980). Finally, in *State v. Wallace*, 98 Idaho 318, 563 P.2d 42 (1977), our Supreme Court rejected the notion that a sentencing judge could consider only those matters formally placed before him. The court stated that "[o]fficers of our judicial system are not monks living in cells, but rather people living in society with the ability to see and hear." *Id.* at 320–21, 563 P.2d at 44–45. In this case, the judge hardly could be expected to disregard what he already knew about Gibson from the other case.

■ We acknowledge that a defendant may be denied due process where the sentencing judge relies upon information that goes beyond the record and is materially untrue. *Townsend v. Burke*, 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948); *United v. Huff*, 512 F.2d 66 (5th Cir.1975); *State v. Ellefson*, 287 N.W.2d 493 (S.D. 1980). However, Gibson does not claim that the information here was untrue. The use of fraudulent weight tickets apparently was admitted by Gibson. Neither does it appear that Gibson was unfairly surprised by the judge's reliance on such information. Both sides knew that the judge was aware of the testimony in the prior proceeding. In exercising sentencing discretion, a judge may utilize knowledge gained from his own official position and his own observations. *Williams v. New York*, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949).

■ In this case, the sentencing judge fully disclosed that he was considering, for a limited purpose, some evidence presented at the preliminary hearing in the other case. Gibson did not ask the court for a

continuance, nor did he seek to introduce additional mitigating testimony at the sentencing hearing. Accordingly, we hold that the court committed no error by using this information to evaluate Gibson's character.

The judgment of conviction and the sentence are affirmed.

WALTERS, C.J., and SWANSTROM, J., concur.

### ON DENIAL OF PETITION FOR REHEARING

BURNETT, Judge.

Gibson asserts that our principal opinion contains a factual error. He contends that he asked the hay seller to "tell it like it is" after the conference with the attorney, rather than before the conference. However, Gibson cites no particular passage in the trial transcript to support this contention. We have carefully reviewed the transcript. We find that it does not contradict the sequence of events related in our opinion.

Moreover, even if the remark had been made after the conference, it remained the jury's task to weigh the remark and to decide what inference, if any, should be drawn from it. The jury permissibly could have inferred that Gibson's remark was made not to discontinue the prior solicitation of perjury but simply to encourage the hay seller to testify according to a belief, expressed in the attorney's office, that he had not been "shorted." Upon such an inference, Gibson's remark would not have constituted a retraction of the offer to pay for false testimony if the hay seller concluded—as he ultimately did—that in fact he had been "shorted."

Gibson also urges that our opinion "strains" to uphold the jury's verdict. However, this argument misapprehends the standard of appellate review. Our function is not to decide anew whether Gibson is guilty or not guilty. It is to determine whether the verdict is supported by substantial evidence, even though the evidence may be conflicting or may give rise to varying inferences. As noted in our principal opinion, jurors are permitted to draw reasonable inferences from the evidence; and we are constrained to view the record favorably to the state, on appeal from a judgment of conviction.

We have examined the other points raised in the petition for rehearing, finding them to be unpersuasive. Therefore, the petition for rehearing is denied.

WALTERS, C.J., and SWANSTROM, J., concur.